OPINION OF THE COURT
Richard E. Sise, J.
*222 Synopsis: Defendant’s motion for summary judgment is granted. Claimant’s cross motion for summary judgment or in the alternative for relief pursuant to Court of Claims Act § 10 (6) is denied.
Text of the decision: Claimant has brought this action asserting two causes of action. In the first claim, she seeks damages for injuries she alleges were sustained, when, beginning sometime prior to September 1999, the defendant began issuing false statements regarding the status of her student loans to credit reporting agencies. Claimant’s second cause of action seeks injunctive relief and a letter of apology.
Defendant, viewing the claim as sounding in defamation has moved for summary judgment asserting the claim is untimely, barred by truth as an absolute defense and that the defendant enjoys a qualified immunity in making the at-issue statements. (Friedman affirmation 1Í 4.) Defendant further asserts claimant has failed to properly plead a cause of action for defamation by failing to allege actual damages and the specific words and/or date of the alleged defamatory statements (id.).
The court begins its analysis with the jurisdictional issue raised by defendant that the claim, construed by defendant as pleading an intentional tort, defamation, was not served within the applicable statute of limitations. Claims for intentional torts are required to be served and filed within 90 days of accrual, unless the time to serve the claim is extended by service of a timely notice of intention to file a claim, then the claim must be served and filed within one year of the date of accrual (Court of Claims Act § 10 [3-b]). It is black letter law that the service and filing requirements of the Court of Claims Act are to be strictly construed (see Lichtenstein v State of New York, 93 NY2d 911, 912-913 [1999] [Court of Claims Act § 10]; Finnerty v New York State Thruway Auth., 75 NY2d 721, 722 [1989] [Court of Claims Act § 11]).
Contrary to claimant’s assertion, defendant’s first affirmative defense satisfies the particularity requirement of Court of Claims Act § 11 (c) as it provides “adequate and clear notice to any reasonable person that a defect is claimed to exist and that it may at some point be used as the basis of a motion to dismiss” (Sinacore v State of New York, 176 Misc 2d 1, 6 [1998]; see also Fowles v State of New York, 152 Misc 2d 837 [1991]) and refers both to the relevant statute and to the requirement that was vitiated. As such, the statute of limitations defense is preserved.
Defendant relies upon Gelbard v Bodary (270 AD2d 866 [2000], lv denied 95 NY2d 756 [2000]), wherein a libel and *223 slander claim involving the further distribution of a letter to a review committee, first published a month earlier, was dismissed, in part, under the single publication rule. The Court stated “a reading of libelous material by additional individuals after the original publication date does not change the accrual date for a defamation cause of action but, rather, the accrual date remains the time of the original publication” (id. at 866; see also Vogel v State of New York, 187 Misc 2d 186 [2000]; PJI 3:26 [2003]).
Claimant counters this argument by pointing out that defendant provided monthly updates to the three credit reporting agencies and the Department of Education (Meyerson affirmation 1Í 36). Relying on Rinaldi v Viking Penguin (52 NY2d 422, 433 [1981]), which held that a republication of a book in paperback that repeats the defamation in a later edition could still give rise to a new cause of action, claimant argues the updates are distinct publications with each month giving rise to a new cause of action thereby removing defendant’s alleged defamatory statement from the single publication rule.
Defendant in reply argues that even if the single publication rule were not applied to the monthly updates, the claim would still be time-barred as the last update was published to the Department of Education and credit reporting agencies in August 2000 (Friedman reply affirmation H 12).
The Court of Appeals in 1948 adopted the single publication rule holding that “the publication of a defamatory statement in a single issue of a newspaper, or a single issue of a magazine, although such publication consists of thousands of copies widely distributed, is, in legal effect, one publication which gives rise to one cause of action and that the applicable Statute of Limitation[s] runs from the date of that publication” (Gregoire v Putnam’s Sons, 298 NY 119, 123 [1948]). The single publication rule received its most recent interpretation in a claim far removed from Guttenberg’s printing presses in Firth v State of New York (98 NY2d 365 [2002]), a claim involving publication on the Internet. In Firth, the Court of Appeals applied the single publication rule to a Web site posting holding that successive “hits” were not a republication nor was the Web site republished each time material unrelated to the defamatory content was updated (Firth v State of New York, 98 NY2d 365 [2002]).
In the instant claim, the point made in Gelbard is pertinent in that the credit reports, a document neither made nor distributed by the defendant, are read by many upon request, a *224 circumstance over which the defendant has no control (accord, Firth v State of New York, 98 NY2d 365 [2002] [multiple publication rule for Web site access rejected]). A fair reading of claimant’s papers discloses claimant does not distinguish between the actions of the defendant and the actions of the credit reporting agencies.[1] In this regard, the credit reports — such as that from First American CredCo (see n 1, supra) — are properly viewed as being akin to a late sale from a remote publishing event (see Gregoire, supra) and do not trigger a new claim or accrual date.
More problematic is whether the monthly updates provided by defendant constitute a republication. The court’s research has disclosed two cases regarding the “continued reporting” of allegedly defamatory credit information to credit agencies. In Ferber v Citicorp Mtge., Inc. (1996 WL 46874, 1996 US Dist LEXIS 1210 [SD NY, Feb. 6, 1996, Schwartz, J.]), plaintiffs learned that certain loans, managed by another partner, had become delinquent early in 1992 and requested that Citicorp Mortgage work with them to resolve the matter as plaintiffs intended to fulfill their obligations under the loans. Despite plaintiffs’ efforts from August to October 1992, including tender of payments, Citicorp in October 1992 reported to credit bureaus plaintiffs’ default and that foreclosure proceedings had been commenced. Plaintiffs sought to amend their complaint to add allegations that Citicorp continued to report the loans in default from April 20, 1993 through May 18, 1993. The District Court denied the proposed amendment finding that the “continued reporting” was not a republication giving rise to a new cause of action as “[n]o alleged modification contained in the reports issued after April 26, 1993 distinguish them from those already issued to their intended audience” (1996 WL 46874, *6, 1996 US Dist LEXIS 1210, *17). As such, the proposed amendment lacked merit in that it was barred by New York’s one-year statute of limitations for defamation actions (id.; see also CPLR 215 [3]). A similar result was reached in David J. Gold, P.C. v Berkin (2001 WL 121940, 2001 US Dist LEXIS 1206 [SD NY, Feb. 13, 2001, Schwartz, J.]), where the District Court held that even if the reporting that plaintiff failed to pay the disputed debt had *225 continued to date within one year of the filing of the complaint, such would nevertheless be barred by the single publication rule.
Applying the foregoing to the instant facts, although the record does not contain examples of the updates, there is nothing in the record to suggest that the information reported regarding claimant’s student loan status changed materially from the date of first reporting until the date defendant ceased providing same in August 2000[2] (see David J. Gold, P.C. v Berkin, supra). Equally important in this analysis is that the monthly updates were provided to the same entities each time, the three credit reporting agencies and the Department of Education.[3] As such, the continued reporting of claimant’s delinquency cannot be considered a republication as the material allegation, that claimant was in default, remained unchanged. The court therefore concludes the statute of limitations began to run with the first publication of claimant’s alleged default by defendant which was “sometime prior to September 1999” (claim 1f 6), as credit reporting is subject to the single publication rule rendering the filed claim untimely.
Assuming arguendo the single publication does not apply to the monthly reports submitted by defendant, defendant has nevertheless established its entitlement to summary judgment on the jurisdictional issue. Defendant has established that its last report was made in August 2000 (Friedman reply 1Í12), thereby requiring that either a claim be filed or notice of intention be served by November 2000. Clearly, the instant claim filed in May 2001 is untimely.
Despite claimant’s arguments to the contrary, defendant is entitled to summary judgment on the second cause of action as well. The Court of Claims is a court of limited jurisdiction and has “no jurisdiction to grant strictly equitable relief’ (Psaty v Duryea, 306 NY 413, 416 [1954]; see also Sprachman v State of New York, Ct Cl, McNamara, J., Claim No. 100781 UID #2000-011-520).
*226 Turning to claimant’s application pursuant to Court of Claims Act § 10 (6) it must be denied. In the first instance, the court may not treat the claim filed on May 8, 2001 as timely as claimant requests (Meyerson affirmation 11 35; see Byrne v State of New York, 104 AD2d 782, 783 [1984], lv denied 64 NY2d 607 [1985] [the court is without discretionary power to grant nunc pro tunc relief]). Rather, it is well-settled that the factors a court must consider in determining a properly framed Court of Claims Act § 10 (6) motion are whether (1) the delay in filing the claim was excusable, (2) the State had notice of the essential facts constituting the claim, (3) the State had an opportunity to investigate the circumstances underlying the claim, (4) the claim appears to be meritorious, (5) the failure to file or serve upon the Attorney General a timely claim or to serve upon the Attorney General a notice of intention resulted in substantial prejudice to the State, and (6) there is any other available remedy (see Matter of Gavigan v State of New York, 176 AD2d 1117, 1118 [1991]; Bay Terrace Coop. Section IV v New York State Employees’ Retirement Sys. Policemen’s & Firemen’s Retirement Sys., 55 NY2d 979, 981 [1982]). However, such application must be made “before an action asserting a like claim against a citizen of the state would be barred under the provisions of article two of the civil practice law and rules” (Court of Claims Act § 10 [6]), otherwise, the court lacks subject matter jurisdiction to grant the relief (Miller v State of New York, 283 AD2d 830 [2001]). Here, claimant seeks leave to late file a cause of action, defamation, which is subject to the one-year statute of limitations found in CPLR 215 (3) (Firth v State of New York, 98 NY2d 365 [2002]). The application seeking that relief was filed on March 7, 2003, well over a year since the last purported publication (see, supra). As such, the court lacks subject matter jurisdiction to grant the relief requested and the cross motion is denied.
Claimant’s remaining argument that there are 11 other causes of action (Meyerson affirmation 1i 14) set forth in the claim which defendant has failed to address is without merit. Although claimant, through counsel, put forth a paragraph listing the names of 12 causes of action (including the defamation claim) in her claim (claim 1Í 4) the “claim suffers from the failure to have each distinct cause of action and its elements separately alleged” (Schneider v State of New York, Ct Cl, Patti, J., Index No. 2004-013-010, Claim No. 106220, Motion Nos. M-66533, CM-66578) and a fair reading of the claim reveals claimant set forth and denominated only two causes of action.
*227 By virtue of the foregoing, defendant’s motion for summary judgment is granted in its entirety and claimant’s cross motions are denied in their entirety. Accordingly, claim No. 104248 shall be and hereby is dismissed.

. For example, claimant points to a credit report dated March 1, 2001, from First American CredCo which identified its sources as the three major credit reporting bureaus and which further noted that the “creditor [Defendant] failed to respond” (Milner affidavit exhibit A) and argues that March 1, 2001, or later, is the accrual date of this claim (see Meyer son affirmation UK 37-38).

. The court declines to draw the inference suggested by claimant that the updates were materially altered each month (see Meyerson affirmation H 37) because records of each update were not available for production.

. Claimant provides no authority for the proposition that defendant’s use of a collection agency in December 2000 in an effort to collect the alleged debt gives rise to a cause of action for defamation (Meyerson affirmation 1Í 38). Regardless, pursuant to Court of Claims Act § 10 (3-b) the claim filed on May 8, 2001 would still be untimely.